

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: April 27, 2021**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

HERITAGE REAL ESTATE INVESTMENT, INC.,          CASE NO. 14-03603-NPO

DEBTOR.                                                                    CHAPTER 7

**MEMORANDUM OPINION AND ORDER:**
**(1) STRIKING MOTION FOR EMERGENCY STAY OF**
**SALE; (2) DENYING AS MOOT MOTION TO WITHDRAW**
**AND STRIKE DEBTOR'S MOTION FOR EMERGENCY**
**STAY OF SALE; AND (3) RESOLVING ORDER TO SHOW CAUSE**

This matter came before the Court for a hearing on April 6, 2021 (the "Hearing"), on the

Motion for Emergency Stay of Sale (the "Emergency Motion") (Dkt. 604) filed by Van Turner

("Turner"), purportedly on behalf of the debtor, Heritage Real Estate Investment, Inc.

("Heritage"); the Trustee's Response to Motion for Emergency Stay of Sale (the "Trustee

Response") (Dkt. 614) filed by J. Stephen Smith, the duly-appointed chapter 7 trustee for the

Heritage bankruptcy estate (the "Trustee"); the Motion to Withdraw and Strike Debtor's Motion

for Emergency Stay of Sale (the "Motion to Withdraw") (Dkt. 620) filed by Turner, purportedly

on behalf of Heritage; and the Order to Show Cause (the "Show Cause Order") (Dkt. 609) issued

to Turner to show cause why the Emergency Motion should not be stricken from the docket in the

above-referenced bankruptcy case (the "Bankruptcy Case") and why sanctions should not be

issued against Turner pursuant to Rule 9011(c) of the Federal Rules of Bankruptcy Procedure ("Rule 9011"). At the Hearing, Jim F. Spencer ("Spencer") and Eileen N. Shaffer ("Shaffer") appeared on behalf of the Trustee, and Turner appeared on his own behalf.[1] The Court issued its ruling from the bench but reserved the Trustee's request for attorneys' fees for later decision. The Court instructed the Trustee to file a motion and provide an itemization of his attorneys' fees and costs incurred in responding to the Emergency Motion. *See* MISS. BANKR. L.R. 7054-1. On April 14, 2021, the Trustee filed two affidavits, the Affidavit Regarding Fee Request (the "Spencer Affidavit") (Dkt. 636) signed by Spencer with an attached itemization of his attorney's fees totaling $1,590.00 (the "Spencer Itemization") (Dkt. 636-1) and the Affidavit Regarding Fee Request (the "Shaffer Affidavit") (Dkt. 637) signed by Shaffer with an attached itemization of her attorneys' fees totaling $525.00 (the "Shaffer Itemization") (Dkt. 637-1). Turner did not respond to the Spencer Affidavit or the Shaffer Affidavit. This Opinion memorializes and supplements the Court's bench ruling and resolves the issue of sanctions.

## Jurisdiction

The Court has jurisdiction over the parties to and subject matter of pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Notice of the Hearing was proper under the circumstances.

---

[1] On April 6, 2021, Turner was denied entry to the Thad Cochran United States Courthouse in Jackson, Mississippi pursuant to the COVID-19 protocol as outlined in Special Order # 13 issued by the U.S. District Court for the Southern District of Mississippi on March 16, 2021. The Court gave Turner the option of continuing the Hearing or proceeding telephonically. Turner chose to proceed with the Hearing telephonically.

## Facts[2]

The Bankruptcy Case has a long and complicated history that will not be repeated here except as necessary to provide context to the Emergency Motion and the Show Cause Order.[3] Briefly, Heritage is one (1) of six (6) related entities operating under the umbrella of the Greater Christ Temple Apostolic Church (the "Church") in Eutaw, Alabama. Bishop Luke Edwards ("Bishop Edwards") established the Church in 1961. Other Church-related entities include Alabama-Mississippi Farm, Inc. ("AL-MS Farm"), Dynasty Group, Inc. ("Dynasty"), Reach, Inc., Apostolic Association Assemblies, Inc., and Apostolic Advancement Association ("AAA"). Heritage was established as a for-profit corporation in Mississippi in 1989 and has served as a holding company for multiple businesses, including motels, a shopping center, and convenience stores. (Dkt. 75 at 3-4).

### Prepetition Litigation

On August 25, 2011, a default judgment in the amount of $6,599,648.00 (the "Alabama Default Judgment") was entered against Heritage, Bishop Edwards, AL-MS Farm, and AAA by

---

[2] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3] A full discussion of the history of the prepetition litigation and the Bankruptcy Case is recited in the Memorandum Opinion and Order: (1) Consolidating Hearings; (2) Overruling Objection to Trustee's Third Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC & Approving Trustee's Third Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC in Heritage Real Estate Investment, Inc. Bankruptcy Case; (3) Overruling Objection to Trustee's Sixth Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC & Approving Trustee's Sixth Application for Approval to Pay Compensation and Reimbursement of Necessary Expenses of Watkins & Eagers, PLLC in Alabama-Mississippi Farm, Inc. Bankruptcy Case (the "Fee Opinion") (Dkt. 610) and the Memorandum Opinion and Order: (1) Consolidating Hearing; (2) Granting Motion for Default Judgment; (3) Issuing Permanent Injunction; and (4) Awarding Damages entered in *Heritage Real Estate Investment, Inc. v. Edwards*, Adv. Proc. 20-00034-NPO and *Alabama-Mississippi Farm, Inc. v. Edwards*, Adv. Proc. 20-00035-NPO.

the Circuit Court of Greene County, Alabama in favor of William Harrison ("Harrison"), Michael King ("King"), and Bruce Johnson ("Johnson"[4] or together with Harrison and King, the "Harrison Parties"). *See Edwards v. Johnson*, 143 So. 3d 691 (Ala. 2013). An untimely appeal of the Alabama Default Judgment was dismissed by the Alabama Supreme Court on October 18, 2013. *Id*. In an effort to collect the Alabama Default Judgment, the Harrison Parties filed the Complaint for Fraudulent Transfer of Real Estate and for an Injunction in the Circuit Court of Sumter County, Alabama (the "Alabama Fraudulent Transfer Litigation") to set aside conveyances from Heritage to Dynasty of seventeen (17) parcels of property located in Sumter County, Alabama (the "Sumter Property"). (Dkt. 268, 490, 493). The Harrison Parties also conducted a sheriff's sale of a 43-acre tract of real property in Greene County, Alabama (the "Greene County Property"). (No. 16-00035-NPO Dkt. 1). The Harrison Parties "credit bid" at the sheriff's sale of the Greene County Property and received a sheriff's deed. (*Id*.). Under Alabama state law, Heritage had one (1) year from the date of the sheriff's sale to redeem the Greene County Property. (*Id*.).

**Bankruptcy Case**

On November 6, 2014, Heritage commenced the Bankruptcy Case by filing a petition for relief under chapter 11 of the U.S. Bankruptcy Code. (Dkt. 1). The Bankruptcy Case was converted to a chapter 7 case on January 21, 2015 (Dkt. 75), and the Trustee was appointed to administer the Heritage bankruptcy estate. (Dkt. 83). The Trustee's duties in the Bankruptcy Case are set forth in 11 U.S.C. § 704 and include "collect[ing] and reduc[ing] to money the property of the estate" and "object[ing] to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(1), (5).

---

[4] Johnson died in 2019. After his death, his estate was substituted as the named party in pending contested matters. For brevity, all references to Johnson after his death are to his estate.

**Greene County Settlement**

The one (1) year period to redeem the Greene County Property from the sheriff's sale had not expired when Heritage filed the petition. After Heritage filed the petition and the case was converted, Heritage, without the consent of the Trustee, purportedly executed a quitclaim deed transferring the Greene County Property to the Church. (*Id.*). The same day the parties executed the quitclaim deed, AAA and the Church tendered a certified check in the amount of $96,750.00 (the "Check") to Ira Drayton Pruitt, as counsel for the Harrison Parties, to redeem the Greene County Property. (*Id.*). On June 15, 2016, the Trustee filed an adversary proceeding against the Harrison Parties, AAA, and the Church seeking a declaratory judgment as to the parties' rights in the Greene County Property and the Check. (*Id.*).

The Bankruptcy Clerk entered entries of default against Harrison, King, AAA, and the Church. (No. 16-00035-NPO Dkt. 13, 14). AAA and the Church asked the Court to set aside the entries of default, and the Court denied the request because they failed to establish either excusable neglect or a meritorious defense. (No. 16-00035-NPO Dkt. 36). AAA and the Church appealed the order denying the request to set aside the entry of default. (No. 16-00035-NPO Dkt. 38; *see Smith v. Apostolic Assoc. Assemblies, Inc. (In re Heritage Real Estate Inv., Inc.)*, Case No. 3:16-cv-00929-CWR-FKB (S.D. Miss.)). The Court then entered default judgments against all of the defendants in the adversary proceeding except Harrison. (No. 16-00035-NPO Dkt. 73, 74). The Court held that AAA and the Church had no interest in the Greene County Property or the amounts paid to redeem the Greene County Property. (No. 16-00035-NPO Dkt. 73). The Court similarly held that Johnson and King had no interest in the amounts paid to redeem the Greene County Property, but that Johnson and King were entitled to retain the Greene County Property in partial satisfaction of the Alabama Default Judgment. Johnson and King, however, had to reduce their

claim in the Bankruptcy Case by $96,750.00.  (No. 16-00035-NPO Dkt. 74).  The Church and AAA appealed the default judgment that the Court entered against them, and the appeal was later dismissed by the U.S. District Court for the Southern District of Mississippi (the "Mississippi District Court") for lack of jurisdiction.  *See Apostolic Assoc. Assemblies, Inc. v. Smith (In re Heritage Real Estate Inv., Inc.)*, Case No. 3:17-cv-00743-DPJ-FKB (S.D. Miss.).

During the pendency of AAA and the Church's appeal, the Trustee and Harrison reached an agreement.  The Trustee agreed to quitclaim any interest he may have in the Greene County Property to the Harrison Parties, and Harrison, in turn, agreed to reduce the claim from the Alabama Default Judgment by $96,750.00 and to allow the Trustee to retain the redemption proceeds of $96,750.00.  (No. 16-00035-NPO Dkt. 125).  AAA and the Church appealed the Court's order approving the settlement agreement between Harrison and the Trustee and the default judgment.  *See Apostolic Assoc. Assemblies, Inc. v. Smith*, No. 3:18-cv-00675-DPJ-FKB (S.D. Miss.).  The Mississippi District Court remanded the case for further proceedings and ordered the parties to contact United States Magistrate Judge F. Keith Ball to oversee a settlement conference (the "Settlement Negotiations").  (No. 3:18-cv-00675-DPJ-FKB Dkt. 15).

**Alabama Fraudulent Transfer Litigation**

The Trustee was substituted as the plaintiff in the ongoing Alabama Fraudulent Transfer Litigation in *Smith v. Dynasty Group, Inc.*, No. CV-14-9000949 (Ala. Cir. Ct.).  After a jury trial in the Alabama Fraudulent Transfer Litigation, a final judgment was entered in favor of the Trustee, setting aside the conveyances of the Sumter Property to Dynasty and revesting title in Heritage (the "Alabama Final Judgment").  (Dkt. 268, 490, 493).  On July 10, 2020, the Alabama Supreme Court affirmed the trial court.  (Dkt. 493-1).  The Alabama Supreme Court certified its ruling affirming the jury verdict in favor of the Trustee on July 28, 2020.  (Dkt. 490 at 9-12).

**Motion to Stay**

On September 18, 2020, Henry L. Penick ("Penick"), the attorney of record for Dynasty, filed the Motion to Stay (the "Motion to Stay") (Dkt. 490) in the Bankruptcy Case asking the Court to stay the Trustee's execution of the Alabama Final Judgment with respect to the Sumter Property on the ground that attorney Paul A. Robinson ("Robinson"), on behalf of Dynasty, had filed a petition for a writ of certiorari to the U.S. Supreme Court (the "Alleged Certiorari Petition") seeking review of the Alabama Final Judgment. (Dkt. 490). In the Motion to Stay, Dynasty asked the Court to "issue an order staying the actions of the Trustee . . . from selling or otherwise interfering with the property of Dynasty Group, Inc. until final resolution of this matter by the United States Supreme [Court.]" (Dkt. 490 at 2). Dynasty attached as an exhibit to the Motion to Stay an email receipt from the U.S. Supreme Court Electronic Filing Support Group indicating that a petition for a writ of certiorari had been submitted electronically on September 10, 2020 but not much else. (Dkt. 490 at 14).

The Trustee filed a response to the Motion to Stay (Dkt. 493) asserting that Penick declined to provide him with a copy of the Alleged Certiorari Petition. The Trustee alleged that he was never served with a copy of the Alleged Certiorari Petition and that his search of the U.S. Supreme Court's docket system failed to show that Dynasty had filed the Alleged Certiorari Petition. (Dkt. 493-3). The Trustee attached to the Motion to Stay email exchanges dated a few days after the filing of the Motion to Stay among Penick, H. Lanier Bruin II, and Spencer indicating that the Trustee had requested a copy of the Alleged Certiorari Petition from Penick and that Penick, in turn, told him to obtain a copy from ~~him~~ Robinson. (Dkt. 493-4 at 1).

**First Motion to Sell**

During the pendency of the Motion to Stay, the Trustee filed the Motion for Approval of

Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "First Motion to Sell") (Dkt. 497) on October 5, 2020, asking the Court to approve the sale of two (2) parcels of the Sumter Property recovered as a result of the Alabama Fraudulent Transfer Litigation. Objections to the First Motion to Sell were filed by the Harrison Parties, Bayview Loan Servicing, LLC ("Bayview"), and IB Property Holdings, LLC ("IB"). (Dkt. 502, 508). Dynasty did not file an objection to the First Motion to Sell. Subsequently, the Trustee, the Harrison Parties, Bayview, and IB reached an agreement, and on November 2, 2020, the Court entered the Agreed Order Approving Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses (the "First Sale Order") (Dkt. 518).

**Order to Supplement**

To expedite resolution of the parties' factual dispute with respect to the Motion to Stay as to whether Robinson, on behalf of Dynasty, actually had filed the Alleged Certiorari Petition, the Court entered the Order Regarding Motion to Stay (the "Order to Supplement") (Dkt. 505) instructing Penick, on behalf of Dynasty, to file a copy of the Alleged Certiorari Petition by October 23, 2020 as a supplement to the Motion to Stay. (Dkt. 505). On October 23, 2020, Penick, on behalf of Dynasty, filed the Supplement to Motion to Stay (the "First Supplement") (Dkt. 507). As "proof of filing of a Petition For Writ of Certiorari in the United States Supreme Court on behalf of Dynasty[,]" Penick attached as an exhibit a pixelated partial picture of a webpage from the U.S. Supreme Court's Electronic Filing System. (Dkt. 507 at 6). The webpage was the "Summary" page of an electronic submission of a petition for a writ of certiorari and identified Dynasty as the petitioner and Robinson as its attorney. (Dkt. 507 at 6). This exhibit differed from the email receipt attached to the Motion to Stay. The First Supplement did not include the Alleged

Certiorari Petition as an exhibit and thus provided support only for the possibility that Dynasty started the process for filing a petition for a writ of certiorari. (Dkt. 507 at 6). Indeed, the partial prompt at the top of the webpage stated, "Once you have submitted your electronic filing request you will not be able to edit the . . . " with the remaining words of the sentence falling off the page.

The day before the hearing on the Motion to Stay (the "Motion to Stay Hearing"), Penick filed the Second Supplement to Motion to Stay (the "Second Supplement") (Dkt. 509). The Second Supplement included as an exhibit "a copy of the document filed with [the Alleged Certiorari Petition]." (Dkt. 509). The exhibit consisted of a copy of the Brief of the Appellant filed by Penick on behalf of Dynasty in the Alabama Supreme Court (the "Alabama Brief"). (Dkt. 509 at 6-57). Neither the First Supplement nor the Second Supplement includes a copy of the Alleged Certiorari Petition purportedly submitted to the U.S. Supreme Court on September 19, 2020.

**Motion to Stay Hearing**

On October 27, 2020, the Court held the Motion to Stay Hearing. Penick again argued that a stay preventing the Trustee from executing the Alabama Final Judgment was proper because the Alleged Certiorari Petition was pending before the U.S. Supreme Court. (Dkt. 493 at 2). He did not produce a copy of the Alleged Certiorari Petition at the Motion to Stay Hearing. Penick stated that Robinson was handling the Alleged Certiorari Petition and that he himself had never seen it. (Motion to Stay Hr'g at 11:38:24-11:38:50 (Oct. 27, 2020)).[5] According to Penick, Robinson was still "working on the actual Petition" and that a "brief in support of the Petition," consisting of the Alabama Brief, had been filed as a "stop gap" measure with the U.S. Supreme Court. (Motion to

---

[5] The Motion to Stay Hearing was not transcribed. The citation is the timestamp of the audio recording.

Stay Hr'g at 11:36:50-11:37:52 (Oct. 27, 2020)).  The Court denied the Motion to Stay from the bench and shortly thereafter issued the Order Denying Motion to Stay (Dkt. 528).

**Motion to Reconsider First Sale Order**

On November 16, 2020, Penick, on behalf of Dynasty, filed the Motion to Reconsider (the "Motion to Reconsider First Sale Order") (Dkt. 525) asking the Court to reconsider the First Sale Order.  In the Motion to Reconsider First Sale Order, Dynasty alleged that it "was not allowed to give input in the hearing, or raise its objection predicated on its prior Motion to Stay proceedings until Dynasty's Petition for writ of Certiorari to the United State Supreme Court is adjudicated." (Dkt. 525 ¶ 5).  Dynasty did not file a timely written objection to the First Motion to Sell.  The Court denied the Motion to Reconsider First Sale Order from the bench and issued the Order Denying Motion to Reconsider (the "Order Denying Motion to Reconsider") (Dkt. 562) finding that Dynasty: (1) did not have an interest in the Sumter Property; (2) failed to file a written objection to the First Motion to Sell before the deadline to assert an interest in the disposition of the Sumter Property; (3) misinterpreted the Court's bench ruling on the Motion to Stay; (4) did not reserve its opportunity to participate in the hearing on the First Motion to Sell because it did not file an objection; (5) did not properly seek authority to participate via telephone; and (6) waived the right to participate in the settlement negotiations that produced the First Sale Order.

**Second Motion to Sell**

On November 19, 2020, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Second Motion to Sell") (Dkt. 533) asking the Court to approve the sale of one (1) parcel of the Sumter Property recovered as a result of the Alabama Fraudulent Transfer Litigation.  No objections to the Second Motion to Sell were filed, and the Court entered the Order Approving

Motion for Approval of Auction Contract/Proposal, Sale Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses (Dkt. 558).

**Order Approving Settlement**

As a result of the Settlement Negotiations ordered by the Mississippi District Court, the Trustee, AAA, the Church, and the Harrison Parties reached an agreement regarding the Greene County Property and the Check that resolved the pending adversary proceeding. On December 8, 2020, the Court entered the Order Approving Joint Motion to Approve Compromise and Settlement Pursuant to Rule 9019 (Dkt. # 521) (the "Order Approving Greene County Settlement") (Dkt. 547) approving the agreement.

**Notice of Appeal of Order Approving Greene County Settlement**

On December 18, 2020, Turner and Robinson, both purportedly acting on behalf of Heritage, filed the Notice of Appeal to the United States District Court for the Southern District of Mississippi (the "Greene County Settlement Notice of Appeal") (Dkt. 563) in the Bankruptcy Case appealing the Order Approving Greene County Settlement. *See Heritage Real Estate Inv., Inc. v. Johnson*, No. 3:20-cv-00810-CWR-FKB (S.D. Miss. Dec. 21, 2020). Turner's electronic signature and Mississippi State Bar number identified him as the attorney filing the Greene County Settlement Notice of Appeal. Robinson's name is included under Turner's name and signature, but Robinson is not admitted to practice law in the state of Mississippi.

**Notice of Appeal of Order Denying Motion to Reconsider**

On December 31, 2020, Turner, again purportedly acting on behalf of Heritage, filed the Notice of Appeal to the United States District Court for the Southern District of Mississippi (the "Notice of Appeal of Order Denying Motion to Reconsider") (Dkt. 569) in the Bankruptcy Case appealing the Order Denying Motion to Reconsider. *See Heritage Real Estate Inv., Inc. v.*

*Johnson*, No. 3:21-cv-00003-CWR-LGI (S.D. Miss. Jan. 5, 2021).  On January 4, 2021, Turner filed an amended version of the Notice of Appeal of Order Denying Motion to Reconsider without any changes except for the attached Order Denying Motion to Reconsider.  (Dkt. 571).  Turner's electronic signature and Mississippi State Bar number identified him as the attorney filing the Notice of Appeal of Order Denying Motion to Reconsider.

**Appeal of Order Approving Greene County Settlement**

On January 4, 2021, the Trustee filed the Motion to Dismiss Appeal (No. 3:20-cv-00810-CWR-FKB Dkt. 2) and the Memorandum of Authorities in Support of Motion to Dismiss Appeal for Lack of Standing (together, the "Motion to Dismiss Appeal of Order Approving Greene County Settlement") (No. 3:20-cv-00810-CWR-FKB Dkt. 3) asking the Mississippi District Court to dismiss the appeal of the Order Approving Greene County Settlement purportedly filed on behalf of Heritage for lack of standing.  The Trustee argued that Heritage has "no separate existence outside the [Bankruptcy Case]" and the former officers and directors, therefore, have no authority to hire Turner and/or Robinson to file the Notice of Appeal of Order Approving Greene County Settlement.  (*Id.* at 6).  The Trustee also argued that even if Heritage had the authority to hire counsel, it lacked standing to bring claims on behalf of the bankruptcy estate.  The Mississippi District Court agreed and on February 5, 2021 entered the Order (the "Dismissal Order") (Dk. 598; No. 3:20-cv-00810-CWR-FKB Dkt. 8) dismissing the appeal.  The Dismissal Order held that "Appellant-Debtor Heritage Real Estate Investment, Inc. cannot pursue this appeal" and that "the Trustee (rather than the debtor) is the only party that can sue on behalf of the estate."  (*Id.*).  As

counsel of record, Turner received a copy of the Dismissal Order. (Hr'g at 2:00:22-2:01:28 (April 6, 2021)).[6]

**Appeal of Order Denying Motion to Reconsider**

On January 7, 2021, the Trustee filed the Motion to Dismiss Appeal (No. 3:21-00003-CWR-LGI Dkt. 3) and the Memorandum of Authorities in Support of Motion to Dismiss Appeal (together, the "Motion to Dismiss Appeal of Order Denying Motion to Reconsider") (No. 3:21-00003-CWR-LGI Dkt. 4) asking the Mississippi District Court to dismiss the appeal on the ground that the Trustee is the only person authorized to act on Heritage's behalf and that he has not authorized or initiated the appeal on behalf of Heritage.

On January 25, 2021, Bishop Edwards, or someone acting on his behalf, filed the Second Amended Notice of Appeal Rule 60(d)3 (the "Rule 60 Notice") (No. 3:21-cv-00003-CWR-LGI Dkt. 6) in the Mississippi District Court that did not appeal any particular contested matters in the Bankruptcy Case but cited "special circumstances regard [sic] the aforementioned case." On February 12, 2021, the Trustee filed J. Stephen Smith as Trustee for Heritage Real Estate Investment, Inc.'s Motion to Strike Second Amended Notice of Appeal Filed by Luke Edwards/Heritage Real Estate Investment [Dkt. #6] (No. 3:21-cv-00003-CWR-LGI Dkt. 9) and J. Stephen Smith as Trustee for Heritage Real Estate Investment, Inc.'s Memorandum in Support of Motion to Strike Second Amended Notice of Appeal Filed by Luke Edwards/Heritage Real Estate Investment [Dkt. #6] (together, the "Motion to Strike") (No. 3:21-cv-00003-CWR-LGI Dkt. 10) arguing that the Rule 60 Notice should be stricken from the record because it was substantially similar to another attempted appeal in the Bankruptcy Case that had been resolved and did not

---

[6] The Hearing was not transcribed. Citations are to the timestamp of the audio recording.

comply with Rule 8003 of the Federal Rules of Bankruptcy Procedure. (*Id.*). The Motion to Strike remained pending before the Mississippi District Court at the time of the Hearing.

**Emergency Motion**

The Dismissal Order dismissing the appeal of the Order Approving Greene County Settlement and stating that "the Trustee (rather than the debtor) is the only party that can sue on behalf of the estate" was entered by the Mississippi District Court on February 5, 2021. On March 4, 2021, Turner, purportedly acting on behalf of Heritage, filed the Emergency Motion asking the Court to "stay the sale of certain real properties known as the Sumter County properties more particularly described in the Auction Contract/Proposal Sale of Property (Docket No. 497) as the underlying case is presently under review by the United States Supreme Court." (Dkt. 604). Turner attached as an exhibit to the Emergency Motion a "screen grab" of the U.S. Supreme Court's online docket system showing that Robinson, on behalf of Dynasty, filed a petition for a writ of certiorari on December 7, 2020.[7] (Dkt. 604-1). The Court entered the Order Denying Expedited or Emergency Relief to Extent Requested in Motion for Emergency Stay of Sale (Dkt. 605) denying the request for an expedited hearing on the Emergency Motion for failure to comply with Rule 5005-1 of the Uniform Local Rules for the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi. The Trustee filed the Trustee Response alleging that the Emergency Motion is moot and that Turner has no authority to file the Emergency Motion on behalf of Heritage. (Dkt. 614). The Court scheduled the Hearing for April 6, 2021.

**Show Cause Order**

On March 12, 2021, the Court issued the Show Cause Order to Turner to show cause why the Emergency Motion should not be stricken from the docket and why sanctions should not be

---

[7] In the Motion to Stay, Penick maintained that the Alleged Certiorari Petition had been submitted on September 10, 2020.

issued against him.  The Show Cause Order noted that the Trustee previously had challenged Turner's authority to file documents on behalf of Heritage, that the Mississippi District Court had entered the Dismissal Order holding that Turner lacked authority to act on behalf of Heritage, and that the Dismissal Order was not appealed.  The Court asked Turner to be prepared to "disclose the identity of the individual(s) who purportedly authorized [him] to file the [Emergency] Motion." (Dkt. 609).

## Motion to Withdraw

The night before the Hearing on April 5, 2021 at approximately 8:00 p.m., Turner filed the Motion to Withdraw asking the Court for permission "to withdraw and strike from the docket" the Emergency Motion.  (Dkt. 620).  In the Motion to Withdraw, Turner alleges that "[u]pon learning that the Trustee did not grant authority to [Heritage] to pursue the emergency stay, [he] ceased all efforts to request a hearing or to further pursue the stay in compliance with Rule 9011(b)."  (Dkt. 620 at 2).  Turner also alleges that once he was "advised that the Trustee had challenged [his] authority to file on behalf of [Heritage]" on March 12, 2021,[8] he took no further action.  (*Id.*).  In the Motion to Withdraw, Turner does not cite the February 5, 2021 Dismissal Order from the Mississippi District Court that states, "Appellant-Debtor Heritage Real Estate Investment, Inc. cannot pursue this appeal" and that "the Trustee (rather than the debtor) is the only party that can sue on behalf of the estate."  (Dk. 598; No. 3:20-cv-00810-CWR-FKB Dkt. 8).  The next day, Turner filed the proposed Order Granting Motion to Withdraw and Strike Debtor's Motion for Emergency Stay of Sale (Dkt. 621).

---

[8] The Spencer Itemization and Shaffer Itemization confirm that the Trustee contacted Turner on March 12, 2021 regarding the Show Cause Order and his filings with the Court.  (Dkt. 636-1, 637-1).

**Hearing**

The Court held the Hearing on April 6, 2021. At the Hearing, Turner explained that Robinson had contacted him to serve as local counsel for Dynasty in an attempt to stay the sale of the Sumter Property pending resolution of Dynasty's petition for writ of certiorari before the U.S. Supreme Court. (Hr'g at 1:39:40-1:41:18 (April 6, 2021)). Turner asserted that before he filed the Emergency Motion, he asked Robinson about the Dismissal Order and Robinson informed him that the filing was proper because they represented Dynasty not Heritage. (Hr'g at 1:41:01-1:41:29 (April 6, 2021)). For this reason, Turner believed he had proper authority to sign and file the Emergency Motion on behalf of Heritage.

Turner apologized to the Court and explained that in hindsight he should have filed a motion to intervene on behalf of Dynasty rather than the Emergency Motion on behalf of Heritage. (Hr'g at 1:41:50-1:42:22 (April 6, 2021)). Turner acknowledged that "there should not have been any representations made by me or my law firm on behalf of Heritage" and that he "should have been watching this more carefully. [His] understanding was that [he] was local counsel for attorney Robinson who was going to [be admitted] *pro hac vice* into this matter properly and take over representation." (Hr'g at 1:42:30-1:42:39 (April 6, 2021)). Turner explained that Robinson had drafted all pleadings that he had filed in the Bankruptcy Case with the sole exception of the Motion to Withdraw. (Hr'g at 2:00:21-2:01:53 (April 6, 2021)). Even though he admitted receiving notice of multiple orders entered by this Court and the Mississippi District Court holding that only the Trustee had the authority to pursue claims on behalf of Heritage, Turner relied on Robinson's representations that his actions in the Bankruptcy Case were proper. (Hr'g at 2:00:21-2:01:15 (April 6, 2021)). Turner readily agreed to take whatever steps were necessary to withdraw

the Emergency Motion and obtain dismissal of the appeal of the Order Denying the Motion to Reconsider.

At the Hearing, the Court ruled from the bench, finding that Turner's actions violated Rule 9011. Additionally, the Court enjoined Turner from taking any action on behalf of Heritage as described in more detail later in this Order. The Court took under advisement the issue of sanctions and ordered the Trustee to submit a motion itemizing the attorneys' fees and expenses he incurred as a result of having to defend the Emergency Motion. The day after the Hearing, Turner filed the Appellant's Voluntary Dismissal and Withdrawal of Appeal (No. 3:21-cv-00003-CWR-LGI Dkt. 11) in the appeal of the Order Denying Motion to Reconsider. On April 8, 2021, the Mississippi District Court entered an order dismissing the appeal. (No. 3:21-cv-00003-CWR-LGI Dkt. 12).

## Fee Affidavits

On April 14, 2021, the Trustee filed the Spencer Affidavit with the attached Spencer Itemization and the Shaffer Affidavit with the attached Shaffer Itemization. The Spencer Itemization reflects that from March 4, 2021 through April 6, 2021, the Trustee was charged an hourly billing rate of $300.00 for 5.30 hours of work completed by Spencer, which totals $1,590.00. (Dkt. 636-1). The Shaffer Itemization reflects that from March 4, 2021 through April 6, 2021, the Trustee was charged an hourly billing rate of $250.00 for 3.80 hours of work completed by Shaffer, which totals $525.00. (Dkt. 637-1). The Shaffer Itemization and Spencer Itemization describe the legal work performed related to the Trustee's efforts to respond to the Emergency Motion. (Dkt. 636-1, 637-1).

## Discussion

By signing, filing, submitting, or later advocating a petition, pleading, written motion, or other paper, an attorney or unrepresented party certifies "that to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances" it is not being presented for any improper purpose, the legal contentions are warranted, and the allegations have evidentiary support. FED. R. BANKR. P. 9011(b). The signature requirement ensures that the persons who are responsible for the accuracy of the content of petitions, pleadings, written motions, and other papers may be readily identified. *See In re Stroecker*, Case No. 09-52079-NPO (Dkt. 38) (Bankr. S.D. Miss. Nov. 17, 2009). Although Rule 9011(b) does not specifically require that a paper be read before it is filed or submitted to the Court, the signature certification renders that requirement self-evident. 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1335 (4th ed. 2018) ("The point is made clear by the Advisory Committee Note accompanying the amendment, which expressly states, the 'obligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court.'" (internal citation omitted)).

The Fifth Circuit Court of Appeals measures an attorney's conduct under an objective standard of reasonableness under the circumstances so that an attorney's good faith belief is not a defense to Rule 9011 sanctions. *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir. 1987). The Fifth Circuit has held that the following factors may be considered in determining the reasonableness of an attorney's inquiry into the facts: (1) the time available to the signer for investigation; (2) the extent of the attorney's reliance upon his client for the factual support for the document; (3) the feasibility of pre-filing investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal issues; and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.

1988). Courts have considerable discretion in determining the appropriate sanction to impose upon a violating attorney. *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

Turner does not dispute that he did not have authority to file the Emergency Motion on behalf of Heritage and that he relied on assurances from Robinson that the filing was proper. According to Turner, Robinson prepared the Emergency Motion, and he merely filed it as "local counsel." Indeed, Turner stated that the Motion to Withdraw was the only pleading that he himself drafted. In filing the Notice of Appeal of the Order Confirming Greene County Settlement, the Notice of Appeal of the Order Denying Motion to Reconsider, and the Emergency Motion, Turner certified that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that the pleadings were not being presented for any improper purpose, the legal contentions were warranted, and the allegations had evidentiary support. *See* FED. R. BANKR. P. 9011(b). Yet any one of numerous decisions from this Court or the Mississippi District Court, most notably the Dismissal Order, should have placed Turner on notice that actions purportedly on behalf of Heritage by anyone other than the Trustee or professionals authorized by the Trustee were improper. Less than a month after entry of the Dismissal Order, Turner nevertheless filed the Emergency Motion that begins, "Comes now your debtor Heritage Real Estate Investment, Inc." Turner's reliance on Robinson that the Emergency Motion was not inconsistent with the Dismissal Order was unreasonable and badly misplaced given the first sentence of the Emergency Motion. In short, Turner admitted that he did not make a reasonable inquiry into the facts or law but instead relied entirely on Robinson. As the Fifth Circuit has held, a good faith belief is not a defense to Rule 9011 sanctions. *Robinson*, 808 F.2d at 1127.

Turner asserted at the Hearing that his reliance on Robinson was due in part to his lack of knowledge and understanding of bankruptcy law. Rule 1.1 of the Mississippi Rules of Professional

Conduct provide that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MISS. RULES OF PROF'L CONDUCT r. 1.1. Turner's admitted lack of knowledge or skill in bankruptcy law is no excuse especially given the clear inconsistency in what Robinson told him and the Dismissal Order. Having found that Turner violated Rule 9011, the Court turns next to the issue of sanctions.

Rule 9011(c) provides that the Court may impose sanctions for violations of Rule 9011 to "deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c). Such sanctions include "directives of a nonmonetary nature, an order to pay a penalty into court, or . . . an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* The Show Cause Order provided notice that the Court may impose sanctions pursuant to Rule 9011(c). Such actions that the Court might take included:

(1)     Striking the Emergency Motion from the docket of the Bankruptcy Case;

(2)     Enjoining Turner and/or his law firm from filing any new documents purportedly on behalf of Heritage in the Bankruptcy Case;

(3)     Imposing monetary sanctions against Turner and/or his law firm;

(4)     Requiring Turner and/or his law firm to pay the attorney's fees and expenses incurred by other parties during the course of this matter, including those associated with any appeal; and/or

(5)     Recommending that the U.S. District Court for the Southern District of Mississippi withdraw the reference in the Bankruptcy Case pursuant to 28 U.S.C. § 157(d) for the limited purpose of considering civil proceedings against him.

(Dkt. 609). At the Hearing, the Court announced its decision to: (1) strike the Emergency Motion from the docket; (2) enjoin Turner from taking any action on behalf of Heritage as described in

more detail later in this Order; and (3) consider requiring Turner to pay the attorney's fees and expenses incurred by the Trustee in defending the Emergency Motion.

### Striking the Emergency Motion

Striking a pleading is among the sanctions that may be imposed under Rule 9011. *In re Brown*, 319 B.R. 876, 881 (Bankr. N.D. Ill. 2005). Here, Turner asks the Court in the Motion to Withdraw to strike the Emergency Motion from the docket. Turner did not have the authority to act on behalf of Heritage, and the Trustee, on behalf of Heritage, has not "request[ed] that this [C]ourt stay any sale of the Sumter properties." (Dkt. 604). The Trustee is actively engaged in the liquidation of the Heritage bankruptcy estate pursuant to his duties provided in 11 U.S.C. § 704. The Trustee's administration includes the sale of the Sumter Property. The Emergency Motion is an attempt to impede the Trustee's administration of the bankruptcy estate. As a remedy, the Court finds that the Emergency Motion should be stricken from the docket.

### Enjoining Turner

An injunction against future filings may be imposed under Rule 9011 to protect the courts and innocent parties if it is tailored to preserve the legitimate rights of litigants. *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). "The court's power to enter such orders flows not only from various statutes and rules relating to sanctions but the inherent power of the court to protect its jurisdiction and judgments and to control its docket." *Id.* An injunction against future filing should be specific and limited and relate only to the same claim against the same defendants or other parties. *Id.*

As the Court explained in detail in the Fee Opinion, the Bankruptcy Case has been consumed with needless litigation that has depleted the assets of the Heritage bankruptcy estate. The Emergency Motion is the latest example of how individuals acting purportedly on behalf of

Heritage have interfered with the Trustee's administration of the Heritage bankruptcy estate.  The Court intended the Fee Opinion to provide notice to all individuals affiliated with the Church, past or present, that litigious attacks on the administration of the Heritage bankruptcy estate would not be tolerated.  The Bankruptcy Case has been ongoing for nearly seven (7) years, and the Trustee has incurred significant expenses in protecting the assets of the bankruptcy estate.  Turner is one of many individuals without standing to act on behalf of Heritage who have interfered with the Trustee's duties.  Most troubling is that the orders of this Court and the Mississippi District Court have gone ignored.  Although Turner, to his credit, has agreed voluntarily not to file any more documents on behalf of Heritage in any case or proceeding, the Court finds that an injunction against Turner nonetheless is necessary to protect this Court's jurisdiction and orders and to control its docket.

**Attorneys' Fees and Expenses**

The Show Cause Order gave Turner proper notice that the Court might consider requiring him to pay the attorneys' fees and expenses incurred by the Trustee.  After the Hearing, the Trustee filed the Spencer Affidavit and the Shaffer Affidavit, respectively, reflecting that the Trustee incurred attorneys' fees in the total amount of $2,115.00.  In order to determine if this amount of attorneys' fees is reasonable, the Court employs the "lodestar" method, which requires the Court to multiply the prevailing hourly rate in the community by the number of hours that an attorney would reasonably expend pursuing his or her client's claim.  *Walker & Patterson, P.C. v. Cahill (In re Cahill)*, 428 F.3d 536, 540 (5th Cir. 2005).  After calculating the "lodestar" fee, the Court considers whether to adjust that fee upwards or downwards based upon the twelve factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989).  The U.S. Supreme

Court has cautioned that the presumption that the "lodestar" method provides a reasonable fee is a "strong one." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). Similarly, the Fifth Circuit has held that "[t]he lodestar may not be adjusted due to a *Johnson* factor that was taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

As noted previously, the Spencer Itemization and Shaffer Itemization reflect that from March 4, 2021 through April 6, 2021, the date of the Hearing, the Trustee was charged an hourly billing rate of $300.00 for 5.30 hours of work completed by Spencer, which totals $1,590.00, and an hourly billing rate of $250.00 for 3.80 hours of work completed by Shaffer, which totals $525.00. The Mississippi Bar Association's online Lawyer Directory reflects that Spencer was admitted to practice law in Mississippi in 1987 and Shaffer was admitted to practice law in Mississippi in 1983. Miss. Bar Lawyer Directory, https://www.msbar.org/lawyer-directory/ (last visited April 27, 2021). The Court finds that $300.00 and $250.00 respectively, are reasonable hourly rates for attorneys of similar skill, expertise, and reputation. Therefore, the Court finds that the respective hourly billing rates are reasonable. The Court further finds that the total number of hours expended by Spencer and Shaffer demonstrate that the time spent on the individual tasks are reasonable.

As to the final step in determining the reasonableness of the fees, the Court recognizes that it has the discretion to modify the "lodestar" fee based upon the twelve *Johnson* factors. *See CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir. 2012) (holding that U.S. Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Court finds that an adjustment to the "lodestar" fee is unnecessary in light

of the strong presumption that the "lodestar" method provides a reasonable fee. The Court thus concludes that the total amount of attorney's fees of $2,115.00 is reasonable.

The Court, however, hesitates to award sanctions against Turner in the full amount of the attorneys' fees incurred by the Trustee because he accepted responsibility for his actions at the Hearing and filed the Motion to Withdraw. Ignoring Turner's attempt to remedy his improper actions would leave no incentive for others to do the same. Still, Turner's conduct clearly violated the Dismissal Order, consumed the limited resources of the Court, and caused the Trustee to incur needless attorneys' fees and costs so that an award of monetary sanctions in some amount is warranted. The Court, therefore, concludes that an appropriate award under these facts is $1,615.00, which is the amount of the Trustee's attorneys' fees reduced by $500.00.

## Conclusion

The Court finds that the Emergency Motion was filed in violation of Rule 9011 and should be stricken from the docket in the Bankruptcy Case. This finding renders the Motion to Withdraw moot. The Court further finds that sanctions should be imposed against Turner for his violation of Rule 9011. Specifically, Turner should be permanently enjoined from serving or filing any motion, pleading, response, answer, affidavit, declaration, brief, record, or other paper on behalf of Heritage in any federal or state case or proceeding, or with any federal or state office or agency, unless the document is necessary to take corrective action consistent with the Dismissal Order. Additionally, Turner should be required to pay the Trustee $1,615.00, which is the amount of the Trustee's attorneys' fees reduced by $500.00.

IT IS, THEREFORE, ORDERED that the Emergency Motion is hereby stricken from the docket in the Bankruptcy Case.

IT IS FURTHER ORDERED that the Motion to Withdraw is hereby denied as moot.

IT IS FURTHER ORDERED that Turner is hereby permanently enjoined from serving or filing any motion, pleading, response, answer, affidavit, declaration, brief, record, or other paper on behalf of Heritage in any federal or state case or proceeding, or with any federal or state office or agency, unless the document is necessary to take corrective action consistent with the Dismissal Order.

IT IS FURTHER ORDERED that the Trustee is hereby awarded actual damages against Turner in the amount of $1,615.00 in attorneys' fees, with interest at the federal judgment interest rate, 28 U.S.C. § 1961(a).

## END OF OPINION ##