

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: May 12, 2021**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**HERITAGE REAL ESTATE INVESTMENT, INC.,**      **CASE NO. 14-03603-NPO**

**DEBTOR.**                                                      **CHAPTER 7**

**MEMORANDUM OPINION AND ORDER:  (1) OVERRULING OBJECTION TO MOTION FOR APPROVAL OF AUCTION CONTRACT/ PROPOSAL, SALE OF PROPERTY, FREE AND CLEAR OF LIENS AND AUCTIONEER'S FEES AND EXPENSES AND (2) GRANTING MOTION FOR APPROVAL OF AUCTION CONTRACT/PROPOSAL, SALE OF PROPERTY, FREE AND CLEAR OF LIENS AND AUCTIONEER'S FEES AND EXPENSES**

This matter came before the Court for hearing on May 4, 2021 (the "Hearing") on the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Third Sale Motion") (Bankr. Dkt. 626)[1] filed by the chapter 7 trustee, J. Stephen Smith (the "Trustee"), of the bankruptcy estate of the debtor, Heritage Real Estate Investment, Inc. ("Heritage"), and the Objection to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses

---

[1] Citations to docket entries in the above-referenced bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. ____)" and citations to docket entries in *Harrison v. Heritage Real Estate Investment, Inc.*, adversary proceeding number 20-00029-NPO (the "Adversary") are cited as "(Adv. Dkt. _____)".

(the "Objection") (Bankr. Dkt. 639) filed by William Harrison ("Harrison"), the Estate of Bruce L. Johnson ("Johnson"),[2] and Michael L. King ("King") (collectively, the "Harrison Parties") in the Bankruptcy Case.  At the Hearing, Jim F. Spencer, Jr. represented the Trustee, and Jeff D. Rawlings represented the Harrison Parties.  Before the Hearing, the Trustee and the Harrison Parties filed numerous exhibits using a docket event created for that purpose.[3]  Because neither the Trustee nor the Harrison Parties introduced any of the exhibits into evidence at the Hearing, the Court does not consider them in reaching its decision.

## Jurisdiction

The Court has jurisdiction over the parties to and subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Notice of the Hearing was proper under the circumstances.

## Facts[4]

On August 25, 2011, the Harrison Parties obtained a default judgment against Heritage, Alabama-Mississippi Farm, Inc. ("AL-MS Farm"),[5] Luke Edwards, and Apostolic Advancement Association in the Circuit Court of Greene County, Alabama, in the amount of $6,599,648.00 (the "Alabama Default Judgment").  (Adv. Dkt. 1 at 2).  A copy of the Alabama Default Judgment was filed with the Probate Office of Sumter County, Alabama.[6]  (Adv. Dkt. 1 at 2).

---

[2] Johnson died in 2019.  For brevity, all references to Johnson after 2019 are to his estate.

[3] *See* Notice Regarding Hearings in Jackson Division (Judge Neil P. Olack) (July 1, 2020), mssb.uscourts.gov/special-notices/court-hearings/.

[4] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[5] AL-MS Farm commenced a bankruptcy case (No. 16-01156-NPO) on March 31, 2016.

[6] There is a dispute as to whether this filing satisfied the requirements of Alabama law for the creation of a judicial lien, an issue that is not before the Court.  *See* ALA. CODE § 6-9-210.

In an attempt to collect the Alabama Default Judgment, the Harrison Parties filed the Complaint for Fraudulent Transfer of Real Estate and for an Injunction in the Circuit Court of Sumter County, Alabama (the "Alabama Fraudulent Transfer Litigation") against Heritage. The Harrison Parties sought to set aside fourteen (14) quitclaim deeds signed by Heritage conveying seventeen (17) tracts of land in Sumter County, Alabama (the "Sumter County Property") to Dynasty Group, Inc. ("Dynasty"), a related entity. (Adv. Dkt. 1, Ex. A). They alleged that Heritage transferred the Sumter County Property to Dynasty for no consideration with the intent to defraud them in violation of the Alabama Uniform Fraudulent Transfer Act.

**Bankruptcy Case**

On November 6, 2014, Heritage filed a petition for relief under chapter 11 of the U.S. Bankruptcy Code. (Bankr. Dkt. 1). On January 21, 2015, the Court converted the Bankruptcy Case to chapter 7 (Bankr. Dkt. 75) and appointed the Trustee to administer Heritage's bankruptcy estate. The Trustee's duties in the Bankruptcy Case include "collect[ing] and reduc[ing] to money the property of the estate" and "if a purpose would be served, . . . object[ing] to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(1), (5).

**Adjudication of Proofs of Claim**

Two nearly identical proofs of claim were filed in the Bankruptcy Case on behalf of the Harrison Parties on May 21, 2015. (Bankr. Cl. 11-1, 13-1). Johnson filed a proof of claim on behalf of himself, King, and Harrison, asserting a secured claim in the amount of $9,094,862.00 ("POC 11") (Bankr. Cl. 11-1). The basis for POC 11 was the Alabama Default Judgment, and the claim was purportedly secured by "Default Judgments." (Bankr. Cl. 11-1). Harrison filed a separate proof of claim on behalf of "Johnson, et al" asserting a secured claim in the amount of

$9,094,862.00 ("POC 13") (Bankr. Cl. 13-1).  The basis for POC 13 was the Alabama Default Judgment, and the claim was purportedly secured by the "Judgment."  (Bankr. Cl. 13-1).

The Trustee filed objections to POC 11 and POC 13.  (Bankr. Dkt. 308, 309).  He filed the Trustee's Objection to Proof of Claim No. 11 Filed by Bruce L. Johnson (the "Trustee's Objection to POC 11") (Bankr. Dkt. 308), asserting that POC 11 was a duplicate of POC 13 and should be disallowed.  He filed the Trustee's Objection to Proof of Claim No. 13 Filed by William Harrison on Behalf of Johnson, *et al*. ("Trustee's Objection to POC 13") (Bankr. Dkt. 309), asking that POC 13 be allowed as a general unsecured claim in the amount of $8,047,163.52.  The Trustee stated that he was unaware of any basis for POC 13 to be allowed as a secured claim and disputed the amount of the claim asserted by Harrison.  Further, the Trustee asserted that a claim on behalf of the Harrison Parties also had been filed in the bankruptcy case of AL-MS Farm, thus "[a]ny disbursement of funds from this case to the parties, or from the AL-MS [Farm bankruptcy] case should be applied to the balance owed under the [Alabama Default] Judgment, in order to prevent any duplication of recovery on behalf of Johnson, Harrison, and King."  (Bankr. Dkt. 309).  The Trustee further noted that any disbursement made to the Harrison Parties should "be made in equal shares of one-third (1/3) of the total disbursement."  (Bankr. Dkt. 309).

Harrison filed the Response of William Harrison to Trustee's Objection to Proof of Claim No. 13 (the "Response to Trustee's Objection to POC 13") (Bankr. Dkt. 312), asserting that POC 13 "is identical in all respects to claim no. 2 filed in [the AL-MS Farm bankruptcy case] and should be allowed in the same amount."  (Bankr. Dkt. 312).  Harrison did not object to the Trustee's proposal to treat POC 13 as a general unsecured claim, but he "request[ed] that the claim evidenced by the [Alabama Default] Judgment be separated into 3 separate and equal claims" among the Harrison Parties.  (Bankr. Dkt. 312).

The Court held a hearing on January 10, 2018 on the Trustee's Objection to POC 11, the Trustee's Objection to POC 13, and the Response to Trustee's Objection to POC 13. Thereafter, the Court entered an order (the "POC Order") (Bankr. Dkt. 342) sustaining the Trustee's objections to POC 11 and POC 13. The Court disallowed POC 11 entirely and allowed POC 13 as a general unsecured claim in the amount of $8,047,163.52. The Court disallowed POC 11 because Johnson did not disagree with or otherwise rebut the Trustee's assertion that POC 11 duplicated POC 13. The Court sustained the Trustee's Objection to POC 13 because Harrison did not otherwise object to the Trustee's proposal to treat POC 13 as a general unsecured claim or the Trustee's calculation of the amount of the claim. The POC Order was not appealed and became final.

**Alabama Fraudulent Transfer Litigation**

In the ongoing Alabama Fraudulent Transfer Litigation, the parties were realigned, and the Trustee was substituted for Heritage as a plaintiff. (Adv. Dkt. 8, Ex. 1). The Harrison Parties then were dismissed without prejudice. (Adv. Dkt. 8, Ex. 1). After a three-day trial, the jury rendered a verdict in favor of the Trustee. On April 25, 2019, the Circuit Court of Sumter County, Alabama entered the Final Judgment (the "Alabama Fraudulent Transfer Judgment") setting aside the conveyances of seventeen (17) parcels of property to Dynasty, stating: "The titles to the properties described in the fourteen (14) quitclaim deeds, as more particularly described as follows, shall be, and are hereby re-vested in HERITAGE REAL ESTATE INVESTMENT, INC., effective as of the date of the final judgment." (Adv. Dkt. 1, Ex. C). Dynasty appealed the Alabama Fraudulent Transfer Judgment to the Alabama Supreme Court, which affirmed the trial court on July 10, 2020. (Adv. Dkt. 1, Ex. D). The Alabama Supreme Court certified its ruling on July 28, 2020. (Adv. Dkt. 8, Ex. B). Dynasty filed a petition for a writ of certiorari, which the U.S. Supreme Court denied on May 3, 2021. *See Dynasty Grp., Inc. v. Smith*, No. 20-1186 (May 3, 2021).

**Adversary**

On August 20, 2020, the Harrison Parties filed the Complaint for Declaratory Judgment, to Determine Extent, Validity, and Priority of Liens and For Other Relief (the "Complaint") (Adv. Dkt. 1) against Heritage seeking to have their unsecured claim, POC 13, reconsidered and deemed secured by the seventeen (17) properties recovered in the Alabama Fraudulent Transfer Litigation. They asserted that their judgment lien attached to the Sumter County Property upon entry of the Alabama Fraudulent Transfer Judgment.  The Trustee filed the J. Stephen Smith, Trustee of the Estate of Heritage Real Estate Investment, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6) (Adv. Dkt. 8) seeking the dismissal of the Complaint on the ground that the relief sought by the Harrison Parties was barred by the doctrine of *res judicata*. The Trustee pointed out that the Court previously had adjudicated the status of their claim as unsecured in the POC Order, which the Harrison Parties had not appealed.  The Harrison Parties argued that the exception to the doctrine of *res judicata* found in 11 U.S.C. § 502(j) and Federal Rule of Bankruptcy Procedure 3008 applied.  The Court rejected their argument and agreed with the Trustee that *res judicata* prevented the Harrison Parties from attempting to relitigate the unsecured status of their claim.  The Court, therefore, dismissed the Adversary with prejudice.

The Harrison Parties appealed the dismissal of the Adversary to the U.S. District Court for the Southern District of Mississippi (the "District Court") on November 2, 2020 in *Harrison v. Heritage Real Estate Inv., Inc.*, No. 3:20-CV-0708-HTW-LGI (S.D. Miss. Nov. 2, 2020).  The Harrison Parties argue on appeal that this Court erred by failing to reconsider the POC Order and reclassify POC 13 as secured in light of the Alabama Fraudulent Transfer Judgment.  The appeal has been fully briefed and remains pending before the District Court.  No motion to stay has been granted by this Court or the District Court.

**Sumter County Property Sale Motions**

In the Bankruptcy Case, the Trustee has proceeded to market and sell the Sumter County Property recovered as a result of the Alabama Fraudulent Transfer Litigation. 11 U.S.C. § 704. The Sumter County Property is comprised of seventeen (17) tracts of land. The Court already has approved the sale of three tracts of the Sumter County Property as discussed in more detail below. (Bankr. Dkt. 518, 558).

**First Sale Motion**

On October 5, 2020, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "First Sale Motion") (Bankr. Dkt. 497) asking the Court to approve the procedures for the auction and sale of two tracts of the Sumter County Property comprised of 177+/- acres and 564+/- acres. Two objections to the First Sale Motion were filed. Bayview Loan Servicing, LLC ("Bayview") and IB Property Holdings, LLC ("IB") filed a joint Response to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (Bankr. Dkt. 502), and the Harrison Parties filed the Response to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Harrison Parties Response") (Bankr. Dkt. 508).

The Harrison Parties did not oppose the sale but asserted that "minimum bids should be established before the sale and all liens, if any, should attach to the auction proceeds." (Bankr. Dkt. 508). Subsequently, the Trustee, the Harrison Parties, Bayview, and IB and reached an agreement, and the Court entered the Agreed Order Approving Motion for Approval of Auction

Contract/Proposal, Sale of Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses[7] (the "First Sale Order") (Bankr. Dkt. 518). In addition to approving the auction and sale, the First Sale Order prohibited the Trustee from making any distribution of the sales proceeds without a Court order. The Harrison Parties agreed to this language as evidenced by the signature of their counsel on the last page of the First Sale Order. (Bankr. Dkt. 518).

**Second Sale Motion**

On November 19, 2020, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Second Sale Motion") (Bankr. Dkt. 533) asking the Court to approve the sale of 152.74+/- acres of the Sumter County Property. The Second Sale Motion is substantially similar to the First Sale Motion except that the First Sale Motion alleged "[t]hat there are no known perfected liens on said property" (Bankr. Dkt. 497 at 2) and the Second Sale Motion alleged that any liens of Bayview and IB "shall attach to the sales proceeds in the same priority, extent and validity as prior to the sale." (Bankr. Dkt. 533). No objection was filed to the Second Sale Motion. On December 15, 2020, the Court entered the Order Approving Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses (the "Second Sale Order") (Bankr. Dkt. 558). The Second Sale Order does not contain language prohibiting the Trustee from making any distribution of the sales proceeds without a Court order but otherwise is similar to the First Sale Order.

---

[7] On November 16, 2020, Dynasty filed a Motion to Reconsider (the "Motion to Reconsider") (Bankr. Dkt. 525) the First Sale Order, which the Court denied on multiple grounds, including that Dynasty failed to file a written objection to the First Sale Motion. (Bankr. Dkt. 562). An appeal of the denial of the Motion to Reconsider, purportedly filed by Heritage (Bankr. Dkt. 569), was dismissed voluntarily on April 4, 2021. *See Heritage Real Estate Inv., Inc. v. Johnson*, No 3:21-cv-00003-CWR-LGI Dkt. 12 (S.D. Miss. Apr. 4, 2021).

**Third Sale Motion**

The Court previously approved the Trustee's employment of Taylor Auction & Realty, Inc. in the Bankruptcy Case.  (Bankr. Dkt. 155).  In the Third Sale Motion, filed on April 6, 2021, the Trustee requests authority to enter into an online-only auction contract with Taylor Auction & Realty, Inc. to liquidate five tracts of the Sumter County Property varying in size from 0.29 acres to 94.17 acres.  Only the largest tract of 94.17 acres is comprised of more than one acre.  The other tracts are 0.29 acres, 0.65 acres, 0.98 acres, and 1.00 acre.

Attached to the Sale Motion is the Online Auction Marketing Proposal (Bankr. Dkt. 626-6 at 1-3) and the Online Only Real Estate Proposal/Contract (the "Online-Only Auction Contract") (Bankr. Dkt. 626-6 at 4-9).  The land will be sold at an online auction with a reserve.  *See* ALA. CODE § 7-2-328(3).  Any outstanding *ad valorem* taxes, plus accrued interest, will be paid pro rata at the closing.  Taylor Auction & Realty Inc. will receive compensation of a ten percent (10%) buyer's premium assessed on the hammer price at auction plus reimbursement of advertisement expenses of approximately $8,250.00.  Taylor Auction & Realty Inc. also will receive a five percent (5%) surcharge on all expenses as a management fee.  All of these provisions are identical to those approved by the Court in the First Sale Order and the Second Sale Order.

The Harrison Parties filed the Objection.  No other objection was filed to the Third Sale Motion.  The Objection filed by the Harrison Parties consists of two numbered paragraphs.  In the first numbered paragraph, the Harrison Parties allege that they "possess a recorded judgment lien" against the Sumter County Property.  In the second numbered paragraph, they maintain that they do not oppose the sale, but they request that the Court include language in any order approving the Third Sale Motion that "their judgment lien should attach to the auction proceeds."  (Bankr. Dkt. 639 at 1).  This language does not appear in either the First Sale Order or the Second Sale Order.

## Discussion

At the Hearing, the Court noted as a preliminary matter that the Harrison Parties had failed to address in the Objection the impact of the pending appeal of the dismissal of the Adversary to the District Court on this Court's jurisdiction. *See* 28 U.S.C. § 158(a)(1); FED. R. BANKR. P. 8003(a). The filing of a notice of appeal is an event of "jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see Tex. Comptroller of Pub. Accts. v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 578-79 (5th Cir. 2002) (applying rule to bankruptcy cases). It divests a bankruptcy court of jurisdiction to act with respect to matters involved in the appeal. *Griggs*, 459 U.S. at 58. A bankruptcy court retains jurisdiction only to address elements of a bankruptcy case that are not the subject of that appeal. *Sullivan Cent. Plaza I, Ltd. v. BancBoston Real Estate Cap. Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 727 (5th Cir. 1991). A bankruptcy court may continue to address matters "indirectly implicated in the appeal" only if doing so would not undermine the appeal process. *Scotia Dev. LLC v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274, 280 (5th Cir. 2010).

The Harrison Parties argued at the Hearing that the issues they have raised in the pending appeal differ from the issues they present in the Objection. Their argument was not entirely clear. They apparently contend that their judicial lien may not be extinguished under 11 U.S.C. § 506(d) in the absence of an adversary proceeding and, therefore, remains valid notwithstanding the POC Order. Section 506(d) provides, in pertinent part, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void" unless specific exceptions apply. 11 U.S.C. § 506(d).

The Harrison Parties did not cite 11 U.S.C. § 506(d) or any other legal authority in the Objection in support of their allegation that "their judgment lien should attach to the auction

proceeds." (Bankr. Dkt. 639 at 1). Basic fairness and due process required that the Harrison Parties raise these issues in the Objection and not for the first time at the Hearing. The Trustee did not object when the Harrison Parties presented these issues, and at this juncture, they have been raised before the Court. The Harrison Parties do not cite 11 U.S.C. § 506(d) in the Brief of Appellants (the "Brief of Appellants") (3:20-cv-00708-HTW-LGI Dkt. 7 at 16), but they nevertheless argue that the appropriate method to extinguish their judicial lien was not followed by this Court.[8] This is the same argument they raised for the first time at the Hearing, and the Court finds that it cannot sustain the Objection without undermining the appeal process.

The relevant facts in the appeal begin in 2015 when the Harrison Parties filed two proofs of claim asserting secured claims of $9,094,862.00. (Bankr. Cl. 11-1, 13-1). The Trustee filed objections to both. (Bankr. Dkt. 308, 309). After a hearing in 2018, the Court issued the POC Order disallowing one claim as duplicative of the other and allowing the second claim as unsecured in the amount of $8,047,163.52. The Harrison Parties then initiated the Adversary in 2021, which the Court dismissed based on the doctrine of *res judicata*.

The Fifth Circuit Court of Appeals has embraced a functional test in determining whether the issues involved in a pending appeal divest the bankruptcy court of jurisdiction over a particular matter. *See Scopac*, 624 F.3d at 280. In their appeal of the Court's dismissal of the Adversary, the Harrison Parties list eleven issues in the Brief of Appellants (No. 20-cv-00708-HTW-LGI Dkt. 7), which include, in summary, whether the Court erred in holding that *res judicata* precluded the reclassification of their claim from unsecured to secured. In the Objection, the Harrison Parties ask the Court to recognize the existence of their judicial lien on the proceeds from the sales of the

---

[8] The Trustee asserts in the appeal that this argument is untimely. (No. 20-cv-00708-HTW-LGI Dkt. 8 at 19).

five tracts of Sumter County Property.  To grant such relief, however, would require the Court to revisit the POC Order and its dismissal of the Adversary, which would interfere with the issues raised on appeal.  "[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Id.* (quotation & citation omitted).

Notably, the Harrison Parties request that the Court include language in the sale order that they did not request either in the First Sale Order or the Second Sale Order.  They objected to the First Sale Motion but not to the Second Sale Motion.  The Trustee resolved their objection to the First Sale Motion by agreeing to include language in the First Sale Order prohibiting the Trustee from making any distribution of the sales proceeds without a Court order.  At the Hearing, the Trustee indicated that the Harrison Parties rejected his offer to resolve the present dispute by including this same language in a proposed agreed order granting the Third Sale Motion.  Their refusal to accept the Trustee's offer is inconsistent with their prior agreement as to the First Sale Order.

According to the Harrison Parties, they accepted the Trustee's offer to resolve the dispute as to the First Sale Motion and did not object to the Second Sale Motion because the net proceeds from the sales of those tracts of the Sumter County Property did not exceed the priority liens of Bayview and IB.  With the full or partial satisfaction of the priority liens of Bayview and IB from the previous net sales proceeds, the Harrison Parties believe their lien is next in line to be paid.

The Court finds that the language in the First Sale Order should be included in this Order. Because the language relates to the preservation of the sale proceeds rather than the existence of a judicial lien, it does not involve any aspect of the appeal.  Moreover, it is the identical language

agreed to by the Harrison Parties in the First Sale Order and addresses the same issue before the Court in both the Harrison Parties Response and the Objection.

As the Court discussed in detail in the Fee Opinion,[9] the Bankruptcy Case has been consumed with needless litigation that has depleted the assets of the Heritage bankruptcy estate. (Bankr. Dkt. 610). The Court intended for the Fee Opinion to provide notice to all individuals, including the Harrison Parties, that meritless attacks on the administration of the Heritage bankruptcy estate would not be tolerated. The Bankruptcy Case has been ongoing for nearly seven (7) years, and the Trustee has incurred significant expenses in protecting the assets of the bankruptcy estate. By seeking relief outside this Court's jurisdiction, the Harrison Parties again have interfered with the Trustee's administration of the Heritage bankruptcy estate and drained limited judicial resources.

## Conclusion

The Court finds that it lacks jurisdiction to sustain the Objection regarding the validity of the Harrison Parties' alleged judicial lien. The Court agrees with the Trustee's description of the Objection as the Harrison Parties' second attempt at a second bite of the apple. The first bite was the adjudication of the proofs of claim in 2018; their first attempt at a second bite was the filing of the Adversary in 2020. The Objection filed in 2021 is their second attempt at a second bite, which

---

[9] Memorandum Opinion and Order: (1) Consolidating Hearings; (2) Overruling Objection to Trustee's Third Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC & Approving Trustee's Third Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC in Heritage Real Estate Investment, Inc. Bankruptcy Case; (3) Overruling Objection to Trustee's Sixth Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC & Approving Trustee's Sixth Application for Approval to Pay Compensation and Reimbursement of Necessary Expenses of Watkins & Eagers, PLLC in Alabama-Mississippi Farm, Inc. Bankruptcy Case (the "Fee Opinion") (Bankr. Dkt. 610).

cannot succeed while the appeal before the District Court remains pending.  Accordingly, the Court finds that the Objection should be overruled and the Third Sale Motion should be granted.

IT IS, THEREFORE, ORDERED that the Objection is hereby overruled and the Third Sale Motion is hereby granted.

IT IS FURTHER ORDERED that the sale of the five tracts of the Sumter County Property, free and clear of liens, is hereby approved as follows:

0.65 acres, Sumer County, Alabama.  A true and correct copy of the legal description and plat is attached as Composite Exhibit "A";

0.98 acres, Sumer County, Alabama.  A true and correct copy of the legal description and plat is attached as Composite Exhibit "B";

94.17 acres, Sumer County, Alabama.  A true and correct copy of the legal description and plat is attached as Composite Exhibit "C";

0.29 acres, Sumer County, Alabama.  A true and correct copy of the legal description and plat is attached as Composite Exhibit "D"; and

1.00 acre, Sumer County, Alabama.  A true and correct copy of the legal description and plat is attached as Composite Exhibit "E".

IT IS FURTHER ORDERED that the terms and conditions of the Online-Only Auction Contract are hereby approved.

IT IS FURTHER ORDERED that the online-only auction will be held with a reserve.

IT IS FURTHER ORDERED that a ten percent (10%) buyer's premium assessed on the hammer price at auction, expenses of approximately $8,250.00, and a five percent (5%) surcharge on all expenses are hereby approved and are to be paid to Taylor Auction & Realty, Inc. at the time of closing.

IT IS FURTHER ORDERED that any outstanding *ad valorem* taxes, plus accrued interest, shall be paid pro rata at the closing.

IT IS FURTHER ORDERED that the Trustee shall not make any distribution of the sales proceeds except as provided herein without further order of the Court.

##END OF ORDER##

DESCRIPTION

PARCEL 1

A parcel of property being located in the Southwest Quarter of the Southwest Quarter of Section 27 Township 18 North, Range 3 West Sumter County, Alabama and being more particularly described as follows;

As the  POINT OF BEGINNING of the parcel herein described, start at the Southeast corner of Lot 14 of the Edmonds and Longshore Subdivision Map Book 2 Page 10 of the Sumter County Probate office, said point being a p.k. nail found on the Northwest right of way of Highway 11, a 120 foot right of way; thence run N 39°03'57" E along said right of way for a distance of 118.67 feet to a 1 inch iron pipe found at the intersection of said right of way and the Southwest right of way of Longshore Drive, a 64.5 foot right of way; thence run N 48°43'15" W along said right of way for a distance of 230.09 feet 1 inch iron pipe found; thence run S 39°05'46" W for a distance of 127.53 feet to a 5/8 inch capped rebar found; thence run S 51°09'11" E for a distance of 29.98 feet to a 5/8 inch capped rebar found; thence run S 50°53'39" E for a distance of 200.00 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 0.65 acres, more or less.



**EXHIBIT**

A



DESCRIPTION

PARCEL 1

 A parcel of property being located in the Southeast Quarter of the Southeast Quarter of Section 28 and the Southwest Quarter of the Southwest Quarter of Section 27 all in Township 18 North, Range 3 West Sumter County, Alabama and being more particularly described as follows;

 As the POINT OF BEGINNING of the parcel herein described, start at the Southwest corner of Lot 14 of the Edmonds and Longshore Subdivision Map Book 2 Page 10 of the Sumter County Probate office, said point being a axle found on the Northwest right of way of Highway 11, a 120 foot right of way; thence run N 50°54'17" W for a distance of 200.13 feet to a 5/8 inch capped rebar found; thence run N 50°49'20" W for a distance of 20.10 feet to a 5/8 inch capped rebar found; thence run S 38°14'48" W for a distance of 34.94 feet to a 6 inch round concrete monument at a fence corner; thence run S 38°47'35" W for a distance of 149.45 feet to a 5/8 inch capped rebar set at a fence corner on the Northeast right of way of Edmonds street, a 40 foot right of way; thence run S 46°02'27" E along said right of way for a distance of 220.02 feet to a 5/8 inch capped rebar set at the intersection of said right of way and the Northwest right of way of said Highway 11; thence run N 39°00'27" E along said right of way for a distance of 203.01 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 0.98 acres, more or less.



EXHIBIT

B



DESCRIPTION

PARCEL 1

A parcel of property located in the West Half of the Southwest Quarter of Section 17 and the East Half of the Southeast Quarter of Section 18 all in Township 19 North, Range 3 West in Sumter County, Alabama and being more particularly described as follows;

As a POINT OF BEGINNING of the parcel herein described, start at the Southwest corner of said East Half of Southeast Quarter, said point being a 5/8 inch capped rebar set; thence run N 00°29'40" W for a distance of 2,172.54 feet to a 5/8 inch capped rebar set on the South right of way of Sumter County Road 12, and 80 foot right of way; thence run N 70°45'34" E along said right of way for a distance of 569.96 feet to a concrete monument found on a curve, said curve having a delta 47°26'05" of and a radius of 1,391.74 feet; thence with a chord bearing of S 85°31'55" E run along said curving right of way for a chord distance of 1,119.59 feet (arc distance of 1,152.21 feet) to a concrete monument found; thence run S 61°55'34" E along said right of way for a distance of 671.70 feet to a 5/8 inch capped rebar set near the top bank of a ditch; thence continue S 61°55'34" E for a distance of 14.17 feet to a point in the centerline of said ditch; thence with a chord bearing of S 28°43'57" W run along said centerline of the ditch for a chord distance of 696.45 feet to a point; thence leaving said centerline, run S 89°31'10" W for a distance of 18.28 feet to a 5/8 inch capped rebar set near the top bank of said ditch; thence continue S 89°31'10" W for a distance of 312.79 feet to a 5/8 inch rebar found; thence run S 00°36'10" W for a distance of 1,323.78 feet to a 1" iron pipe found; thence run S 89°31'10" W for a distance of 1,561.00 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 94.17 acres, more or less.



EXHIBIT
C



DESCRIPTION

PARCEL 1

A parcel of property being located in the North Half of the Southwest Quarter of Section 16 Township 19 North, Range 2 West Sumter County, Alabama and being more particularly described as follows;

COMMENCE at 1/2 inch rebar found called to be 336.7 feet North of the Southeast corner of the Northeast Quarter of said Section 16, per an E.M. Sparkman survey found in D.B. 118 pg. 647 in the Sumter County Probate Office; thence run N 70°34'38" W for a distance of 1,190.92 feet to a 1 inch iron pipe found; thence run N 71°02'33" W for a distance of 219.68 feet to a 1/2 inch rebar found; thence run N 48°12'51" E for a distance of 113.30 feet to the POINT OF BEGINNING of the parcel herein described, said point being a 5/8 inch capped rebar set; thence continue N 48°12'51" E for a distance of 100.00 feet to a 5/8 inch capped rebar set; thence run N 41°06'12" W for a distance of 125.35 feet to a bent 1/2 inch rebar found on the Southeast right of way of Country Club Road, an 80 foot right of way; thence with a chord bearing of S 48°01'12" W run along said right of way for a chord distance of 100.58 feet to a p.k. nail set; thence run S 41°22'09" E for a distance of 125.00 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 0.29 acres, more or less.



EXHIBIT

D



PARCEL 1:

A parcel of property located in the Northwest Quarter of the Northeast Quarter of Section 28, Township 17 North, Range 4 West in Sumter County, Alabama and being more particularly described as follows;

COMMENCE at the Northwest corner of the Southwest Quarter of the Southeast Quarter of Section 21 in said Township 17 North Range 4 West, said point being a 2 inch angle iron found; thence run S 10°20'04" E for a distance of 1,647.74 feet to the POINT OF BEGINNING of the parcel herein described, said point being a 5/8 inch capped rebar set; thence run N 65°12'02" E for a distance of 208.70 feet to a 5/8 inch capped rebar set; thence run S 24°47'58" E for a distance of 208.70 feet to a 5/8 inch capped rebar set 30 feet from a rail road spike found in the centerline of Old Highway 11; thence run S 65°12'02" W parallel to said centerline for a distance of 208.70 feet to a 5/8 inch capped rebar set 30 feet from said centerline; thence run N 24°47'58" W for a distance of 208.70 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 1.00 acres, more or less.

**EXHIBIT**

E



**PARCEL 1:**

A parcel of property located in the Northwest Quarter of the Northeast Quarter of Section 28, Township 17 North, Range 4 West in Sumter County, Alabama and being more particularly described as follows:

COMMENCE at the Northwest corner of the Southeast Quarter of the Southwest Quarter of Section 21 in said Township 17 North Range 4 West, said point being a 2 inch angle iron found; thence run S 10'20'04" E for a distance of 1,647.74 feet to the POINT OF BEGINNING of the parcel herein described, said point being a 5/8 inch capped rebar set; thence run N 65'12'02" E for a distance of 208.70 feet to a 5/8 inch capped rebar set; thence run S 24'47'58" E for a distance of 208.70 feet to a 5/8 inch capped rebar set 30 feet from a rail road spike found in the centerline of Old Highway 11; thence run S 65'12'02" W parallel to said centerline for a distance of 208.70 feet to a 5/8 inch capped rebar set 30 feet from said centerline; thence run N 24'47'58" W for a distance of 208.70 feet to the POINT OF BEGINNING of the parcel herein described. Said parcel containing 1.00 acres, more or less.

**LEGEND**

| | |
|---|---|
| P.O.C. | INDICATES POINT OF COMMENCEMENT |
| P.O.B. | INDICATES POINT OF BEGINNING |
| PG. | INDICATES PAGE |
| | INDICATES PROPERTY LINE |
| ——— | INDICATES BOUNDARY LINE |
| — — — | INDICATES RIGHT-OF-WAY |
| — · — | INDICATES CENTERLINE |
| —×— | INDICATES FENCE |
| | INDICATES QUARTER LINE |
| ○ | INDICATES IRON FOUND |
| ● | INDICATES CALCULATED POINT |
| ◇ | INDICATES 5/8'(0.16) CAPPED REBAR SET |
| | (PS 36920) |
| (MEASUREMENT) | INDICATES NOT TO SCALE |
| | INDICATES DEED MEASUREMENT |

**NOTES:**
1) THE SURVEY SHOWN HEREIN HAS NOT BEEN PREPARED WITH THE BENEFIT OF A TITLE REPORT AND DOES NOT THEREFORE NECESSARILY REFLECT ALL ENCUMBRANCES ON THE PROPERTY.
2) THE BASIS OF BEARING SHOWN HEREIN IS BASED ON NAD 83, ZONE ALABAMA WEST 102, GRID NORTH.
3) ALL IMPROVEMENTS MAY OR MAY NOT BE SHOWN HEREON.
4) INTERIOR IMPROVEMENTS AND/OR PHYSICAL FEATURES HAVE NOT BEEN LOCATED, EXCEPT AS SHOWN.
5) THE SURVEY DEPICTED HEREON IS NOT INTENDED TO SHOW THE LOCATION OR EXISTENCE OF ANY PROTECTED WILDLIFE, WETLAND OR JURISDICTIONAL AREAS, OR AREAS OF PROTECTED SPECIES OF VEGETATION EITHER NATURAL OR CULTIVATED.
6) ANY USE OF THIS SURVEY FOR PURPOSES OTHER THAN WHICH IT WAS INTENDED, WITHOUT WRITTEN VERIFICATION, WILL BE AT THE USERS SOLE RISK AND WITHOUT LIABILITY TO BRYAN LAND SURVEYING, LLC OR THE SURVEYOR. NOTHING HEREON SHALL BE CONSTRUED TO GIVE ANY RIGHTS OR BENEFITS TO ANYONE OTHER THAN THOSE THIS SURVEY WAS PREPARED FOR.
7) CAUTION SHOULD BE TAKEN WHEN SCALING FROM THIS SURVEY MAP, THE MAP MAY CHANGE SCALE DURING THE REPRODUCTION PROCESS RESULTING IN INACCURACIES IN MEASUREMENTS.

**TO WHOM IT MAY CONCERN:**

I, Chad Bryan, a Licensed Professional Land Surveyor in the State of Alabama of Bryan Land Surveying, LLC, Scooba, Mississippi, hereby certify that the premises shown hereon is a true and correct plat and description of said property, and that all parts of this survey and drawing have been completed in accordance with the current requirements of the Standards of Practice for Surveying in the State of Alabama to the best of my knowledge, information, and belief.

Witness my hand this the 27th day, of March 2021 in the year of our Lord.

Chad Bryan
Professional Land Surveyor
AL License Number. 36920

**SURVEY FOR:**
**HERITAGE REAL ESTATE INVESTMENT INC.**

*PROPERTY BOUNDARY SURVEY*

| | |
|---|---|
| COUNTY & STATE | |
| SUMTER COUNTY | |
| | **BRYAN** |
| DRAWN ON DATE | **LAND SURVEYING, LLC** |
| 3/25/21 | P.O. BOX 1064 |
| DATE OF SURVEY | LIVINGSTON, AL. 35470 |
| 3/16/21 | PHONE: 601-917-4873 |
| | EMAIL: bryanlandsurveying1@gmail.com |
| 1" = 100' | OWNER: HERITAGE REAL ESTATE INVESTMENT INC. |
| FILE NAME | SOURCE DEED: D.B. 231 PG. 667 |
| HOLYLANDTRACT14-3-16-21 | SHEET 1 OF 1 |